JOURNAL ENTRY AND OPINION
Defendant-appellant, Thomas Williams, appeals the judgment of the Cuyahoga County Court of Common Pleas finding him guilty of gross sexual imposition of a minor, with a sexually violent predator specification, and sentencing him to four years to life in prison. Appellant contends that the trial court erred in finding him to be a sexually violent predator.
The record reflects that appellant was indicted on July 25, 2000 on a multi-count indictment. Counts one and two of the indictment charged appellant with rape and gross sexual imposition of a six-year-old child, in violation of R.C. 2907.02 and R.C. 2907.05. Counts three through fourteen of the indictment charged appellant with the rape of a nine-year-old child. The State subsequently dismissed count fourteen of the indictment.
All counts contained a sexually violent predator specification pursuant to R.C. 2971.01(I). Prior to trial, the parties agreed that the trial court, rather than the jury, would determine the sexually violent predator specification following a verdict by the jury.
Appellant pled not guilty to the indictment and trial commenced on October 6, 2000. The six-year-old victim testified at trial that she went to appellant's house at about 9:00 p.m. one night in June 1999. Another girl and boy were already there. The victim testified that as she and the other children were sleeping in the living room, appellant touched her on my private and my booty and then he put his weenie on my booty. She testified that she also saw appellant touch the other girl's privacy. The victim testified that appellant took her and the other children to the Memphis Kiddie Park the next day. After appellant took her home, she told her mother what had happened.
Kathy Morris, the victim's mother, testified that appellant was a good friend of her ex-husband, Roland, and she had known him for approximately fifteen years. According to Morris, appellant telephoned her one Thursday evening and asked if her daughter could spend Friday night at his house so that he could take her and his grandchildren to the Memphis Kiddie Park on Saturday. According to Morris, her daughter was gloomy when she arrived home on Saturday. Upon questioning by Morris, her daughter told her that appellant had put his finger in her vagina and played with her bottom while she was lying on the couch watching TV at his home. Morris testified that her daughter told her that appellant had done the same thing to the other girl who was staying at his house. After learning what had happened, Morris took her daughter to her pediatrician for an examination.
Joan Delahay, M.D., testified that she examined the six-year-old victim. According to Delahay, she found no bruising or trauma. Her conclusion was that the victim had been fondled, but not penetrated.
Roland Morris, father of the six-year-old victim, testified that after his ex-wife told him what had happened, he tried several times to get the telephone number of the other victim but was unable to do so. On July 4, 1999, he went to a barbeque at appellant's home. When appellant left the barbeque for a short time, Morris spoke with the other victim's parents and told them what had happened. When the nine-year-old victim's mother questioned her, she admitted that appellant had molested her.
The nine-year-old victim testified at trial that appellant lived with her grandmother. She testified that she, her brother, and a six-year-old girl stayed at her grandmother's house on a Friday night in June 1999. The victim testified that after her grandmother had covered her with a blanket and gone to her bedroom, appellant came over to the couch where she was sleeping, took down his pants and put his privates in my butt. The victim testified that appellant had done this to her on approximately thirteen occasions when she had stayed at her grandmother's house.
Juanita McClain, the nine-year-old victim's mother, testified that appellant was the boyfriend of her mother, Cecelia Grier. She testified further that after Roland Morris spoke with her at the July 4th barbeque, she confronted her daughter and her daughter told her that appellant had molested her. On cross-examination, McClain admitted that her daughter's pediatrician informed her that he saw no signs of penetration.
Scott Kennedy, a sex abuse intake worker at the Cuyahoga County Department of Children and Family Services, testified that he interviewed both victims. Kennedy testified that the six-year-old victim told him that appellant had touched her privates with his hands late at night while they were watching television. The other victim told Kennedy that every time it gets dark [appellant] pulls down his pants and pulls up my pajamas and puts his thing in my booty.
Lauren McAliley, a nurse practitioner at Rainbow Babies and Children's Hospital, testified that she examined the nine-year-old victim on July 19, 1999. McAliley testified that her clinical impression was that it was probable that the victim had been sexually abused.
Two witnesses testified for the defense. Lavonne Holland testified that she was appellant's next-door neighbor. Holland testified that she observed the three children playing at appellant's home on the morning of June 24, 1999. She testified further that she observed a brief argument between Juanita McClain and her mother during the July 4th barbeque.
Cecelia Grier, appellant's girlfriend, testified that appellant left for work the morning after the incident and then returned several hours later. Grier testified that she and appellant then took the children to an amusement park for several hours, where she observed nothing abnormal about their behavior. Grier also testified that on the Friday night of the alleged incident, she and appellant slept in the bedroom. She testified that the children stayed up after appellant went to bed and she got up several times to tell them to quiet down.
The jury found appellant not guilty of count one, rape of the six-year-old victim, but guilty of count two, gross sexual imposition of the six-year-old victim. The jury was unable to reach a verdict regarding counts three through thirteen concerning the nine-year-old victim. Subsequently, pursuant to a plea agreement, appellant pled guilty to an amended charge of gross sexual imposition involving a child under thirteen on count three of the indictment and the remaining counts were dismissed.
After a hearing, the trial court found that appellant is a sexually violent predator, pursuant to R.C. 2971.01. The trial court sentenced appellant to an indefinite term of four years to life imprisonment on count two and a term of three years on count three, the sentences to be served concurrently.
Appellant timely appealed, raising two assignments of error for our review. Appellant's first assignment of error states:
 I. THE TRIAL COURT ERRED IN DETERMINING THAT THE STATE HAD PROVEN BEYOND A REASONABLE DOUBT THAT THOMAS R. WILLIAMS WAS A SEXUALLY VIOLENT PREDATOR PURSUANT TO THE PROVISIONS OF 2907.01(H)(1) OHIO REVISED CODE.
In his first assignment of error, appellant contends that the State failed to prove beyond a reasonable doubt that the factors set forth in R.C. 2971.01(H) were applicable to him and, therefore, the trial court erred in finding him to be a sexually violent predator.
R.C. 2971.01(H)(1) provides that a sexually violent predator is a person who has been convicted of or pleaded guilty to committing * * * a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.
R.C. 2971.01(H)(2) specifies what factors indicate that a person is likely to engage in the future in a sexually violent offense:
 For purposes of division (H)(1) of this section, any of the following factors may be considered as evidence tending to indicate that there is a likelihood that the person will engage in the future in one or more sexually violent offenses:
 (a) The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense. * * *
 (b) The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.
 (c) Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.
 (d) The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.
 (e) The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.
(f) Any other relevant evidence.
Two witnesses testified for the State at the hearing to determine the disposition of the sexually violent predator specification. Stephanie Stallworth testified that in 1977, appellant, who she knew as Tommy, was her mother's boyfriend and often stayed with her and her mother in their apartment. Stallworth testified that appellant babysat her one night in March 1977, when she was four years old. According to Stallworth, appellant got on the bed and motioned for her to get on the bed with him. Stallworth testified that appellant forced her to rub his penis and perform oral sex on him and then he put his penis inside her, both vaginally and anally. According to Stallworth, then we would rest, as he would say, and we would start again.
Stallworth testified that on another occasion, appellant forced her to perform oral sex on him. He ejaculated on the wall and then told her to lick the wall. According to Stallworth, when she refused to do so, appellant beat up the cat.
Stallworth testified that she eventually told her mother what had happened and they filed a police report. Stallworth testified further that she never recanted her statement to the police. A copy of Stallworth's statement, appellant's probation report regarding his 1977 conviction and a court order terminating his probation as of September 29, 1979 were entered into evidence.
Kathy Morris also testified at the hearing regarding the sexually violent predator specification. As at trial, Morris again testified that appellant had called and invited her daughter to sleep at his house; she did not call him and ask if her daughter could sleep there.
The State also introduced the written report of George Schmedlen, Ph.D., J.D., of the Court Psychiatric Clinic. Dr. Schmedlen opined that appellant's denial of his involvement in both the 1977 and current offenses, despite a plea of guilty and a jury verdict of guilty, was a risk factor associated with sexual re-offending.
Defense expert Sandra McPherson, Ph.D., conducted a psychological evaluation of appellant and rendered a written report prior to the hearing. In her written report, Dr. McPherson stated:
 Mr. Williams indicated that he had pled to a GSI involving a child in 1977. He said that he had been watching that child for a girlfriend * * * He was in another state when the complaint was made. At the time that he was arrested for this offense, he was at the hospital with his dying mother. His girlfriend arranged to keep him on the phone so that the police could easily arrest him at that setting. He was told that he could get probation by taking the plea to the gross sexual imposition and decided to do so. He was put on probation but the second time he saw his probation officer, within the first month of his reporting, he was told that he was off probation and he subsequently learned that the child had acknowledged that he was misidentified as her attacker and the man living below them in the same house was the perpetrator. He stated that he did not realize at the time how important it might be to go and have his record expunged.
In her risk analysis, Dr. McPherson concluded that appellant had a moderate risk of sexual recidivism. She noted, however, that appellant maintained his innocence even though convicted and asserted that the prior conviction was due to a false accusation. Dr. McPherson noted further that the facts surrounding appellant's conviction demonstrated a predatory mode of arranging to have children available to victimize, but that appellant denied making such arrangements. Dr. McPherson then opined:
 If Mr. Williams is innocent as he claims and presuming that he is also innocent of the 1977 offense, there is no basis for presuming that he has any potential for sexual offending.
 If, however, the findings of the court accurately represent what occurred and particularly if the pleading in 1977 represented acknowledgment of a real event, the risk for recidivism would be more substantial than is necessarily reflected in the actuarial analysis since an interest in sexual contact of children would be of long standing and a predatory mode for obtaining victims would be in place, and, if Mr. Williams is not telling the truth when he states that he did not commit the offenses, he has also placed himself in the category of people who cannot benefit from sexual offender treatment.
At the hearing, Dr. McPherson similarly acknowledged that if appellant had lied to her about the facts of one or both incidents, there was, in her opinion, a greater likelihood of recidivism.
Patricia Divine, Stallworth's mother, also testified for the defense. Divine denied that she had not believed her daughter in 1977 when she told her what had happened and that she went on an extended vacation shortly after the incident. On cross-examination, Divine testified that appellant left her apartment the morning after the incident with her daughter and she never saw him again. She testified further that although she and her daughter filed a police report, they had no further contact with the police and were never advised that appellant had been caught and convicted.
At the close of the hearing, the trial judge found appellant to be a sexually violent predator. The judge stated:
 The Court is basing its decision naturally on all of the evidence that has been brought forward during the course of the trial and today's hearing and the various exhibits submitted in support of the parties' respective positions; however, the Court believes that there is a fact beyond any doubt, any reasonable doubt, certainly, that first of all the defendant back in nineteen hundred and eighty-seven (sic) pled guilty to the crime of gross sexual imposition on a four-year-old child.
 Secondly, it is a fact * * * that the jury in this particular case has found the defendant guilty beyond any reasonable doubt of gross sexual imposition on a child six years of age.
 The details of the incident before this court as to the six-year-old certainly do not have to be repeated, but I found that child to be a very credible witness, and the details of which are certainly shocking to anyone of clear conscience and respect for the youth of the child involved in this case and the manner in which the defendant took advantage of her.
Appellant admits on appeal that he was convicted of a prior sexual offense, one of the factors set forth in R.C. 2971.01(H)(2) for determining the likelihood that a person will engage in one or more sexually violent offenses, but asserts that the trial judge erred in finding him to be a sexually violent predator because the State failed to prove any of the other factors set forth in R.C. 2971.01(H)(2). We disagree.
First, contrary to appellant's assertion, there is no requirement that all of the factors set forth in R.C. 2971.01(H)(2) be proved in order to find a person to be a sexually violent predator. The statute specially notes that any of the factors may be considered as evidence that an individual is likely to engage in one or more sexually violent offenses.
Moreover, the compelling testimony of Stephanie Stallworth certainly satisfied R.C. 2971.01(H)(2)(d), which reads, The person has committed one or more offenses in which the person has tortured * * * one or more victims. Stallworth testified that on one occasion, appellant forced her to perform oral sex upon him and, after he ejaculated on the wall, told her to lick it. When she refused, he beat her cat. This horrific act, committed upon a four-year-old child, unquestionably amounts to psychological torture.
Third, R.C. 2971.01(H)(2)(f) provides that, in addition to the enumerated factors, the court may consider any other evidence in determining whether an individual is likely to engage in the future in one or more sexually violent offenses. Here, appellant's continued denial of his involvement in both the 1977 and the current offenses, coupled with his absence of remorse, is telling.
Appellant's expert, Dr. McPherson, opined that appellant was at a moderate risk for sexually re-offending. She opined further, however, in both her written report and her testimony at trial, that if appellant had lied about his involvement in the 1977 and the current incidents, the risk for recidivism would be more substantial * * * since an interest in sexual contact of children would be of long standing and a predatory mode for obtaining victims would be in place[.] She also noted that if the events were true and if appellant continued to deny his involvement in them, he has placed himself in the category of people who cannot benefit from sexual offender treatment.
In fact, appellant did lie about his involvement in both incidents. He told Dr. McPherson that the victim in the 1977 incident had recanted her statement and, as a result of her recantation, his probation was terminated within the first month of reporting to his probation officer. The victim, Stephanie Stallworth, testified at the hearing, however, that she never recanted her statement. Moreover, appellant's probation report indicated that his probation did not terminate until September 1979, two years after he pled guilty to the 1977 incident.
Appellant also told Dr. McPherson that the mother of the victim in the instant case had called him and asked if her daughter could stay overnight. Kathy Morris testified, however, that appellant had called her and invited her daughter over. Appellant did not refute the testimony of either Stallworth or Morris in any manner.
Accordingly, we hold that in light of the evidence presented at the hearing, the trial court did not err in finding, pursuant to R.C.2971.01(H), that appellant is likely to engage in the future in one or more sexually violent offenses and, therefore, in determining that he is a sexually violent predator.
Appellant's first assignment of error is overruled.
Appellant's second assignment of error states:
 II. THE TRIAL COURT ERRED IN ITS DETERMINATION OF WHETHER THOMAS R. WILLIAMS WAS A SEXUALLY VIOLENT PREDATOR BY FAILING TO CONSIDER, MAKE AND INCORPORATE SPECIFIC FINDINGS OF FACT, PURSUANT TO O.R.C. 2929.12(D) AND (E), THAT THE APPELLANT WAS A RECIDIVIST AND WAS LIKELY TO ENGAGE IN THE FUTURE IN ONE OR MORE SEXUALLY VIOLENT OFFENSES.
In his second assignment of error, appellant contends that the trial court erred in finding him to be a sexually violent predator because in making its determination, the trial court did not consider the factors for the likelihood of recidivism set forth in R.C. 2929.12(D). Appellant contends that the trial court was required to consider both the factors set forth in R.C. 2971.01(H) and the factors set forth in R.C.2929.12(D). We disagree.
Chapter 2971 of the Revised Code specifically relates to the determination and sentencing of sexually violent predators. In R.C.2971.01, the legislature set forth specific factors to consider in determining whether an offender is a sexually violent predator. There is no reason to presume that the legislature intended that the factors set forth in R.C. 2929.12(D) for determining whether an individual is likely to commit future crimes of any nature also apply to sexually violent predators. Indeed, a cursory review of the factors set forth there indicates that they are not applicable to determining the likelihood that an individual will or will not engage in further sexually violent offenses.
Appellant's second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, J. and ANNE L. KILBANE, J., CONCUR.